Glenn T. Harrell, Jr., J.
(Retired, Specially Assigned), dissenting.
I dissent.
My views regarding the appropriate disposition of this case are informed by the aphorism “Judicial Elections Are Different.” [1] Contested circuit court judgeship elections are different than other types of contested elections for public office because special rules and processes distinguish them as a *156 category apart. They should be treated and seen as different also because of the unique nature of the office being sought. In addition to complying with State election laws generally, judges’ political activities are regulated by Rule 4.1 through 4.6 of the Maryland Code of Judicial Conduct (Md. Rule 16-813). Attorneys who seek judicial office are regulated by Rule 8.2 of the Maryland Lawyers Rules of Professional Conduct (MLRPC) (Md. Rule 16-814). These regulations aim to protect the integrity of judicial office and the legal profession. The Maryland Judicial Campaign Conduct Committee (MJCCC) was formed to focus attention on and foster integrity and civility in this specific genre of the Maryland judicial election process. It was the MJCCC (having received a complaint from an attorney) that highlighted for the Attorney Grievance Commission the problematic conduct of Stanalonis that resulted in the charges brought in the present case.[2]
*157 No such inhibitions regulate or seek to influence the contestants or the contests for other elective offices. Thus, contested judicial elections in Maryland are different from other electoral contests.
As the Majority opinion appears to concede, the present case, as it reaches us, distills to the single question of “whether the statement in Mr. Stanalonis’ campaign flyer [that Judge Densford, as a judge, ‘[o]pposes registration of convicted sexual predators’] was made ... with reckless disregard as to its truth or falsity.” Maj. op. at 139, 126 A.3d at 12 (footnote omitted). The hearing judge concluded that Stanalonis violated the Maryland Lawyers’ Rule of Professional Conduct (MLRPC) 8.2(a) and MLRPC 8.4(c) and (d) by including that statement in his flyer. I stand with her.
So as not to risk paraphrasing or summarizing inaccurately or incompletely the evidence weighed by the hearing judge and the conclusions she reached from that evidence (after assessing the relative credibility of the two main antagonists here), I recount what she stated relevantly in her findings of fact and conclusions of law:
FINDINGS OF FACT
Respondent Stanalonis and several other Assistant State’s Attorneys in St. Mary’s County prosecuted cases involving sex offenses wherein attorney Densford served as private counsel. Based on his experience and that of other prosecutors in the St. Mary’s County Office of the State’s Attorney, Respondent testified that attorney Densford routinely opposed the registration of his clients on the sex offender registry. In reliance, on conversations surrounding the issue and interactions with fellow prosecutors, he determined that Densford opposed the registry.
Judge Densford’s testimony with respect to the registration of convicted sexual predators is as follows:
DIRECT
Q: At any time prior to your appointment on December 22, 2011 in your capacity as a private person or as a *158 criminal defense attorney, did you express opposition to the registration of convicted sexual predators?
A: No. Not as a group. I did when I represented individuals. I didn’t want particular people to have to register and would negotiate that. That had nothing to do with the offender registry. It had to do with representation.
Q: At any time prior to your appointment on December 22, 2011 in your capacity as a private person or as a criminal defense attorney, did you express opposition to the registration of convicted sexual offenders?
A: No
CROSS EXAMINATION
Q: So, you put in as an election issue, your experience of 27 years in private practice, correct? v
A: I did.
Q: No. My question is, as a criminal defense practitioner, during that 27 years, you, in fact, had opposed the registration of convicted sexual predators, correct?
A: No, that is not true. And what I had opposed is my clients pleading to things that would get them registered as sexual offenders, if I could keep that from happening.
Q: All right. So your position during the 27 years as a criminal defense practitioner, you would oppose your clients being convicted of a crime that would require them to be registered as a convicted sexual predator, correct?
A: If I could get them a plea to assault instead of something that put them on the registry, particularly since Mr. Stanalonis and I had a 16 year-old facing charges, yes, I tried to avoid that. Yes, I did.
Q: Okay. And you would from time to time tell people privately in conversations that as a criminal defense practitioner [you were] opposed to registration of convicted sexual predators, correct?
*159 A: No.
Q: No? You never said that in private conversation?
A: That’s been alleged by the State’s Attorney’s Office. It is false.
Q: Okay. So, just so I’m clear, your testimony is that in private conversations while a criminal defense practitioner, you have never said in a private conversation over dinner or elsewhere, that you would oppose the registration of convicted sexual predators.
A: I don’t believe I’ve ever made that blanket statement to anybody privately or publicly.
(Internal citations omitted).
CONCLUSIONS OF LAW
[as to the relevant flyer statement and related testimony]
Respondent’s testimony, which this court finds credible, revealed that he as well as other Assistant State’s Attorneys in St. Mary’s County prosecuted several cases involving sex offenses, wherein attorney David Densford served as defense counsel. Respondent testified that he knew from his own experience and the experiences of other prosecutors in St. Mary’s County, that attorney David Densford would routinely oppose the registration of his clients on the sex offender registry.
At his deposition, Judge Densford testified that he opposed his “clients pleading to things that would get them registered as sexual offenders, if [he] could keep that from happening.” He denied, however, making any such statements as a member of the judiciary, and further stated, that he never had any conversations concerning the Sex Offender Registry with Respondent outside of the context of the representation of a client.
This court finds the testimony of both Judge Densford and Respondent equally compelling. Because of Densford’s history as a defense attorney and discussions with several Assistant State’s Attorneys, Respondent had a demonstra *160 ble basis for believing that Densford opposed the Sex Offender Registry. Additionally, he sought input on the issue from his campaign volunteers and no one disputed the veracity of this assertion. However, this court finds that Respondent was obligated to make a more substantial effort in ensuring the accuracy of the proffered statement, and he failed to do so.
As a result, Respondent acted with reckless disregard as to the truth of the statement that Judge Densford “Opposed registration of convicted sexual predators.” Judge Dens-ford never made any public statement regarding the sex offender registry, and Respondent took no measures outside of those outlined above to ensure the truth of his assertion. Additionally, Respondent’s justification presupposes that Judge Densford personally shared and upheld the values and opinions of the individuals he represented. Respondent’s statement violated Rule 8.2(a), and 8.4(c).
Petitioner also contends that Respondent’s statement that Judge Densford “Opposes registration of convicted sexual predators” violated Rule 8.4(d). Specifically, Petitioner argues that Respondent’s conduct was prejudicial to the administration of justice. This Court agrees. The actions of Respondent were reckless and had the effect of undermining public confidence in the administration of justice. Conduct that reflects negatively on the legal profession and sets a bad example for the public at large is prejudicial to the administration of justice. Attorney Grievance Commission v. Brady, 422 Md. 441 [30 A.3d 902] (2011) (citing Attorney Grievance Commission v. Goff, 399 Md. 1 [922 A.2d 554] (2007)). Respondent failed to make a substantial effort to ensure that the statement was accurate. Thus, in making the statement that Judge Densford “opposes registration of convicted sexual predators” Respondent sent a message to the public that it is acceptable to make representations regarding the identity or opinions of a public official, specially a judge, without first conducting a full and thorough investigation into the accuracy of the assertion.
*161 In sum, Petitioner has established, by clear and convincing evidence, that Respondent violated Rule 8.2(a), 8.4(c) and 8.4(d) of the Maryland Lawyers’ Rules of Professional Conduct.
The Majority opinion sets-up principally its ultimate toleration of Stanalonis’ mis-representation of the view attributed to Judge Densford, as a sitting judge, as protected speech and/or merely imprecise language chosen during the “heat” of nothing more than a generic political campaign. Maj. op. at 140-42, 126 A.3d at 12-14. The Majority’s setting of this scenic backdrop does not convince me to buy-in to its analysis that followed. Wishful thinking and recklessness should not be protected. Contested judicial elections are not merely generic political campaigns.[3]
The “reckless disregard” standard of the MLRPC should be assessed under an objective standard (see Maj. op. at 142-44, 126 A.3d at 14-15). This analytical tool is better suited to policing judicial electoral campaign conduct because it allows for closer regulation of any tendencies on the part of candidates to do or say whatever is in their best interest, especially as they are likely to handicap favorably their ability to get away with it. A subjective standard merely plays into the hands of candidates who want to take advantage of the shadowy margins. I am persuaded that an objective standard is the safer fork in the road to take also because I agree -with the goals of the MJCCC and the Maryland Rules as regards conduct in contested judicial elections.
The Majority opinion is mistaken entirely in its apparent assumption that Judge Shaw Geter “generally credited” (Maj. op. at 145-46, 126 A.3d at 15) Stanalonis’ determination that Judge Densford “opposed the registry.” Id. Rather, by finding credible Judge Densford’s testimony that he, while an *162 attorney in private practice and as a sitting judge, did not make any sweeping or generic statement of opposition to the sex offender registry statutory scheme, Judge Shaw Geter rejected Stanalonis’ self-serving bid to establish a springboard from attorney Densford’s client advocacy to Stanalonis’ patently wrong attribution to Judge Densford of what Stanalonis may have believed he had a “demonstrable basis” to think attorney Densford’s view may have been. I see a wide gap between holding a candidate for judicial office to a standard of “absolute precision in the expression of political speech as part of an election campaign” (id.) and gross carelessness in injecting into the public debate (where little practical or timely opportunity to defend against it existed) a claim for which a reasonable promoter of the claim had no legitimate basis to publish it, but rather a duty to inquire further or verify before leaping to a self-serving and logically faulty premise. Stanalonis, eschewing further inquiry or verification, tailored to his ends, at best, an impermissible and unsupported leap of logic to infer from attorney Densford’s advocacy of his clients’ best interest to a generic and false view of opposition to the statutory scheme held by Densford as a judge. He cared little apparently for whether his starting-point statement was true, accurate, or taken out-of-context, standing pat on the claim that apparently none of his State’s Attorney colleagues spoke up against his unsubstantiated extrapolation from a false starting-point. Stanalonis’ conduct was a gross departure from what a reasonably prudent lawyer challenging a sitting judge should have done and a gross deviation from the kind of conduct we should expect from any candidate for judicial office. Toleration of such shenanigans in general electoral campaigns is one thing, but is not acceptable here. The Majority opinion’s forgiving attitude toward Stanalonis’ misconduct will reap the whirlwind in future contested circuit court elections.
I would overrule Respondent’s exceptions and accept Bar Counsel’s sanction recommendation of a reprimand, in view of the mitigating circumstances found by the hearing judge.

. This is also the title of a pamphlet published by the Maryland Judicial Campaign Conduct Committee (MJCCC), an organization created in 2005, at the behest of former Chief Judge Robert M. Bell of this Court and the Judicial Ethics and Public Trust and Confidence Committees of the Maryland Judicial Conference. The MJCCC was formed to foster integrity and civility in contested elections for Maryland circuit court judgeships.

. The MJCCC website, explaining the organization’s "Statement of Purpose,” characterizes why it seeks to uphold dignity in the conduct of contested judicial elections for circuit court judgeships:
The frankly partisan, occasionally bare knuckles, conduct that we have come to tolerate in campaigns for legislative and executive office are inconsistent with the dignity we rightly count on in those who hold judicial office. The exaggerated rhetoric often employed in contemporary discussions of political issues, when used in the context of judicial elections, is corrosive of the public’s perception of the integrity of the court system. Such campaign tactics damage the integrity of the judiciary —regardless of whether the communication falls within the ambit of constitutionally protected speech.
Maintaining the dignity of the judiciary is necessary to protect the rule of law—a root principle of our social compact and the one sure standard upon which this diverse and frequently fractious nation believes it can rely. The rule of law promises justice, neutrality and fairness. It does not exaggerate to say that the concept has an iconic status and that faith in the rule of law is akin to a civil religion. Judges are symbols of the rule of law. Therefore, those who aspire to judicial office have a special responsibility—a duty in fact—to conduct themselves in their campaigns with a dignity that reflects and honors the public’s reverence for the unique office they seek.
Candidates for circuit court judgeships in an election are offered the opportunity by the MJCCC to pledge publicly to conduct themselves and their campaigns in accordance with the hortatory standards published by the MJCCC. Stanalonis chose not to make this pledge. Of course, that fact alone does not bear directly on the outcome of this case, but it gains prescience in hindsight.

. The Majority seems to want to “try” Judge Densford in absentia in this case through its digressions into examples of his reputed campaign statements about Stanalonis, which the Majority implies to have been less-than-praiseworthy. If the Majority is invoking either the principle that "two wrongs cancel out each other” or the doctrine of invited error, it wanders off the path charted for us.